IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kenneth Morice Jordan, # 300147, ) | |
| ) | Civil Action No. 6:13-2247-BHH-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Warden Levern Cohen; Lt. John ) | |
| Wiggins, Jr.; Major Gary Eichenberg; ) | |
| Lt. Monique M. Capers; Col. Shawnte ) | |
| A. Hooks; and Sgt. Edward E. Mole, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## FACTS PRESENTED

The plaintiff is currently an inmate at the Allendale Correctional Institution ("Allendale") of the South Carolina Department of Corrections. All defendants, during the relevant times in this case, were employees at the Ridgeland Correctional Institution ("Ridgeland") in Ridgeland (Jasper County), South Carolina.

The above-captioned case arises out of two inmate attacks upon the plaintiff. The first inmate attack took place at Ridgeland on or about November 20, 2012.[1] The second attack took place at the Evans Correctional Institution ("Evans") on March 7, 2013.

In his amended complaint (doc. 63), the plaintiff indicates that he is suing the

_____

[1]In his filings, the plaintiff has used both the dates of November 19 and 20, 2012, as the date of the first inmate attack.

defendants in their individual capacities and is seeking $200,000 in compensatory damages for deliberate indifference and $50,000 in punitive damages (doc. 63 at 1–2). The plaintiff also alleges that he was stabbed five times on March 7, 2013, at Evans by Andre Durant (*id.* at 2). According to the plaintiff, "[t]his was caused by the Deliberate Indifference of Cpl. Shawn Hooks[.]" (*id.*).

The amended complaint (doc. 63) incorporates the original complaint (doc. 1), which appears on the docket as an attachment (doc. 63-1) to the amended complaint. The plaintiff alleges that in October 2012, he went to Sgt. Mole, the contraband supervisor, to inquire about getting a cellphone charge against his roommated "excused." The plaintiff told Sgt. Mole that he had information that inmate Dustin Truesdale was smuggling drugs into the prison during visitation. Sgt. Mole referred the plaintiff to Cpl. Shawn Hooks. Subsequently, the plaintiff relayed to Cpl. Hooks the information concerning the smuggling during visitation. Cpl. Hooks assured the plaintiff that what the plaintiff had told him would be confidential and that he would notify Warden Cohen. Cpl. Hooks told the plaintiff that he would not put or place the plaintiff on "front street" because the plaintiff was affiliated with the "Growth Development" organization. Cpl. Hooks also told the plaintiff that, if his information was accurate, he would "excuse" the cellphone charge relating to the plaintiff's roommate. The weekend that the "sting" operation was to occur, the Beaufort Unit was locked down, and inmate Truesdale was not able to attend visitation. The following weekend, the Beaufort Unit was taken off lock-down, and inmate Truesdale went on visitation. According to the plaintiff, "Cpl. Shawn Hooks flagged Truesdale and told him that theres [*sic*] an informant in Beaufort Unit and that he would eventually expose him." The plaintiff alleges that on November 19, 2012, he was approached by inmate Steven Parker ("Parker"). Parker told the plaintiff that Cpl. Hooks had told him that the plaintiff was the person who gave information concerning a robbery, which resulted in Parker's interrogation. Several minutes later, the plaintiff was assaulted by "another inmate" and was told to leave

2

the Beaufort Unit because Cpl. Hooks said that the plaintiff was an informant.  The plaintiff was then assaulted by various inmates and stabbed twice in the arm.  This altercation caused a major disturbance, and many inmates were injured and various disciplinary charges resulted from the incident.  The next day, the plaintiff and other inmates, including inmate Truesdale, were placed in a holding cell together while they awaited questioning by Cpl. Hooks, John Wiggins, and the investigator.  The plaintiff, who was interviewed first, did not cooperate with the investigators because he did not trust Cpl. Hooks and felt that his life was in danger.  Inmate Truesdale returned from his interview and told everyone in the holding cell that the plaintiff was a confidential informant and that he [inmate Truesdale] was the person that the plaintiff had reported for smuggling drugs.  In the holding cell, the decision was made that the plaintiff must prove his "innocence or be dealt with accordingly."

The plaintiff further alleges that on November 21, 2012, Cpl. Hooks confiscated his television and radio.  The plaintiff told Cpl. Hooks that he knew that Cpl. Hooks had revealed that the plaintiff was an informant, and Cpl. Hooks told the plaintiff that he deserved "whatever they do to you."  The plaintiff told Cpl. Hooks that he would notify the Warden about Cpl. Hooks putting his life in danger.  Cpl. Hooks then left the room, went to the officers' desk, and announced that the plaintiff was and is an informant.  The plaintiff followed up by submitting requests to staff and a grievance to Warden Cohen.  After receiving no response, he wrote to Internal Affairs.  The plaintiff claims he was moved to the Special Management Unit ("SMU") at Ridgeland, where he was in several fights with another "Organization member."  He was transferred to Evans, and on March 7, 2013, he was placed in the SMU at Evans with a known "Organization member."  The plaintiff alleges that he was stabbed five times by his cellmate, Andre Durant, who told the plaintiff that he was being targeted for being a "snitch" at Ridgeland and that the plaintiff would receive the same treatment at any other institution.  He was taken to Marlboro County Hospital, but after his discharge from the hospital, the plaintiff experienced numbness in his left thumb

3

and index finger.  The plaintiff spoke with Lt. Wheeler and Classification worker Maddox, who told the plaintiff that the administration at Ridgeland had not alerted the administration at Evans concerning the "endangerment" of the plaintiff's life.  The plaintiff alleges that defendants Cohen, Eichenberg, Capers and Lt. Albert Houser were notified that the plaintiff's life was in danger, but none of them alerted Evans.  He claims that, since his transfer to Allendale in April of 2013, he has suffered numbness in his left hand, but has been told that nothing can be done.  He further claims he has experienced unusual nervousness, paranoia, and post-traumatic stress syndrome, for which he has been prescribed medication and has been placed in a "room alone" at Allendale (doc. 63-1 at 5-8).

In their motion for summary judgment the defendants argue that the plaintiff's original and amended complaints do not comply with Federal Rule of Civil Procedure 8 because they consist of conclusory allegations and because, aside from the claims relating to defendant Hooks, the plaintiff does not specify "which [d]efendant took what actions that violated his rights."  They further argue that any claims against them in their official capacities are barred by sovereign immunity and the Eleventh Amendment, and that the plaintiff cannot show a constitutional violation relating to deliberate indifference.  They also argue that they are entitled to qualified immunity for all claims against them in their individual capacities, and that the plaintiff did not exhaust his administrative remedies, except for the grievance relating to defendant Hooks filed in November 2012 (Grievance No. RCI-1004-12) (doc. 82-1 at 7–18).

The defendants have submitted several affidavits in support of their motion. Defendant Edward E. Mole, "Lieutenant over contraband" at Ridgeland, states in his affidavit that he does recall speaking to the plaintiff about his cellmate's phone, but never spoke with him about the possibility that he had information about violations by another inmate, including Dustin Truesdale.  He further states that he never overheard the plaintiff

4

speaking with any other officer about the possibility that he had information about violations by another inmate, including Dustin Truesdale, and he never had any knowledge that the plaintiff had acted as a confidential informant" when he was housed at Ridgeland.  Lastly, he states that he never believed that the plaintiff was in any increased risk of physical danger while he was housed at Ridgeland (doc. 82-2 at 2).

Defendant Gary E. Eichelberger,[2] a Major at Ridgeland, states in his affidavit that he does not have any personal recollection of the plaintiff, and the plaintiff never told him that he believed that he was at any increased risk of danger or that he believed that his life was in danger.  He does not recall ever receiving a Request to Staff form from the plaintiff advising that he thought that he was at any increased risk of physical danger while he was housed at  Ridgeland.  Moreover, if he had received such a form, he would have brought the plaintiff up for review or placed him in lock-up while the claim was investigated for validity (doc. 82-3 at 1-2).

In his affidavit, defendant John Wiggins, a Lieutenant at Ridgeland, states that the plaintiff never told him that he believed that he was at any increased risk of physical danger or believed that his life was in danger while he was housed at Ridgeland. Defendant Wiggins also states:  "If an inmate had told me he believed that his life was in danger, I would have prepared a protective custody form, for follow-up" (doc. 82-4 at 2).

Defendant Levern Cohen, Warden of Ridgeland, states in his affidavit that the plaintiff was housed in Ridgeland's Beaufort A unit until his transfer to Evans on January 31, 2013.  During the incident of November 20, 2012, the plaintiff was "out of place" in the Beaufort B unit, and the incident in the Beaufort B unit "involved inmates, including Inmate Jordan, known to be involved in security threat groups."  The plaintiff was charged as a result of the incident with unauthorized inmate organization activity or participating with

_____

[2]Major Eichelberger is listed as "Eichenberg" in the pleadings submitted by the plaintiff.

security threat groups.  He was found guilty of that offense on January 16, 2013.  The plaintiff was not seen by medical as a result of the incident on November 20, 2012.  Warden Cohen states that Cpl. Hooks never told him that the plaintiff had provided information about improper activities on the part of inmate Dustin Truesdale.  Warden Cohen further states that if an inmate provides information about improper activities on the part of another inmate and tells a supervisor that his life is in danger, the allegation is investigated.  If the allegation is confirmed through that investigation, a "separation/caution form" or "pre-hearing form" is completed, and a process is begun to separate the informant inmate from the other.  He states that "[a]fter a review of the records, I see no record that either form was completed, indicating to me that Inmate Jordan never made a statement that his life was in danger, or that there was a threat to his safety that he expressed."  In the opinion of the Warden, "being a confidential informant does not make one more likely to be the subject of physical violence, any more than being involved" in a security threat group.  Warden Cohen further stated that the plaintiff never asked for separation from Truesdale or from any security threat group while he was at Ridgeland, and there is no evidence of any instances of physical violence to the plaintiff subsequent to the November 2012 incident and before his move to Evans.  The plaintiff was moved to Evans "due to security concerns as a result of his STG [security threat group] activity."  Warden Cohen further states that "[n]one of the Defendants named in this lawsuit, including myself, have any ability to control the placement of an inmate within another institution."  He states that if he does have knowledge that an inmate is a is in a particular risk, he would contact the warden at the institution to which that inmate is transferred.  However, he was not aware of any danger to the plaintiff from Dustin Truesdale, before the plaintiff was transferred.  Likewise, the warden was not aware of any danger to the plaintiff from the inmate who allegedly attacked him at Evans.  According to Warden Cohen, Cpl. Hooks"has been deployed out of the country with the United States Air Force Reserves (doc. 82-5 at 2-4).

In her affidavit, defendant Monique M. Capers, a Lieutenant at Ridgeland, states that the plaintiff never told her that he believed that he was at any increased risk of physical danger while he was housed" at Ridgeland, and she never received a Request to Staff from from him advising that he thought that he was in any increased risk of physical danger while he was housed at Ridgeland (doc. 82-6 at 1-2).

The plaintiff filed his response to the motion for summary judgment on May 1, 2014. In that response, the plaintiff reiterates the allegations in his amended complaint and further alleges that Warden Cohen was made aware of the plaintiff's life being in danger because of Grievance No. RCI-1004-12, and the response to the grievance indicates that Major Eichelberger "counseled" Cpl. Hooks about the grievance. He claims that the investigation of Grievance No. RCI-1004-12 was not sufficient and was merely recorded as a counseling session for Cpl. Hooks. He claims the attack on March 7, 2013, at Evans was the result of the defendants "failing to act reasonably." He claims that his pleadings comply with Federal Rule of Civil Procedure 8 because they show that he is entitled to relief because of the deliberate indifference of the defendants. He further argues that the defendants are not entitled to summary judgment on the basis of sovereign immunity because the amended complaint makes it clear that they are being sued in their individual capacities. He claims he has shown a constitutional violation based upon the defendants' failure to protect him, and he was attacked at Evans because the institution was not made aware of the substantial risk to the plaintiff. The plaintiff argues that the defendants are not entitled to summary judgment based on qualified immunity because they were aware of the risk to the plaintiff's safety by Grievance No. RCI-1004-12, and he did exhaust his administrative remedies by filing Grievance No. RCI-1004-12. He argues that he also filed a grievance, No. ECI–721-13, after the attack of March 7, 2013, but it was not processed "due to the processing of" Grievance No. RCI-1004-12 (doc. 104 at 1-10).

7

The plaintiff also submitted his own affidavit, where he reiterates his allegations and also states that he was not transferred until after his disciplinary conviction on January 16, 2013. While awaiting transfer, he was housed with "another member" of the security threat group, who attacked him, but the plaintiff "did not report the incident." The plaintiff states that he received the answer to his step one grievance on March 7, 2013, and was taken to the SMU unit at Evans, where he was housed with a member of the security threat group and stabbed five times. He states that he was interviewed by Lieutenant Wheeler and Classification Worker Maddox on March 8, 2013, and after he "disclosed the whole situation" to them, Wheeler and Maddox apprised the plaintiff that there was no notation about Grievance No. RCI-1004-12 and that there should have been "pertinent information concerning the situation." The plaintiff states that he is being treated for post-traumatic stress disorder and paranoia and has been prescribed "Rim Rons 30ms" (doc. 104-1 at 3-4).

The plaintiff also submitted an affidavit from inmate Christian Ray, who states that "it was knowledge [sic], that Cpl. Shawnne [sic] Hooks come to the dorm and announced that inmate Kenneth Jordan was a snitch" (doc. 104-2 at 2). Other exhibits included by the plaintiff are the SCDC incident report dated November 24, 2012, concerning the incident in the Beaufort B dorm on November 20, 2012 (doc. 104-3 at 2), a disciplinary hearing extension/rehearing form dated December 28, 2013 (doc. 104-2 at 2-3); a reference to Grievance No. RCI-1004-12 (doc. 104-4); a reference to the incident report of March 7, 2013 (doc. 104-5); a reference to the incident report of November 24, 2013 (doc. 104-6); a copy of the undersigned's order filed on March 5, 2014, and related documents pertaining to discovery matters in this case (doc. 104-7); a copy of the denial on April 16, 2013, of a grievance, filed as Grievance No. ECI-534-13 at Evans but later renumbered as RCI-0310-13, wherein that the plaintiff requested that Cpl. Hooks be relieved of duty (doc. 104-8 at 2); the denial of Grievance No. ECI-721-13 filed on April 18, 2013, wherein the

8

plaintiff sought the termination of Cpl. Hooks from his job and monetary relief (doc. 104-8 at 3); a Request to Staff Member dated June 20, 2013, by the plaintiff to Ann Hallman requesting information on the disposition of his step two appeal in Grievance No. RCI-1004-12 (doc. 104-9 at 2); a letter from Ann Hallman dated July 22, 2013, indicating that the step two appeal was still pending (*id.* at 3); an earlier inquiry dated June 4, 2013, relating to the step 2 appeal (*id.* at 4); and copies of affidavits filed in this case by the defendants (doc. 104-10 at 2–13).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.   Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Federal Rule of Civil Procedure 8

The defendants contend that the amended complaint does not comply with the requirements of Federal Rule of Civil Procedure 8 because it contains conclusory statements.  Rule 8(a) provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."). Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).   Moreover, *pro se* complaints must be liberally construed.  *See Erickson*, 551 U.S. at 94; and *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)(*per curiam*).  Even so, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

The plaintiff alleges that in November 2012, Cpl. Hooks told members of a security threat group that the plaintiff was a "snitch."  The plaintiff's amended complaint (docs. 63 and 63-1) is sufficient to apprise the defendants that the plaintiff is raising claims of deliberate indifference. *See Stephens v. Brewer*, C.A. No. 6:14cv10, 2014 WL 2965949, at *3 (E.D. Tex. July 1, 2014) (inmate attack upon informant "best characterized as a claim of deliberate indifference").

***Deliberate Indifference***

Prison officials are required to protect prisoners from being attacked by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (suffering physical assaults in prison is not "part of the penalty that criminal offenders pay for their offenses against society") and *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The attack upon the plaintiff on November 20, 2012,[3] when the plaintiff was "out of place" and in the Beaufort B unit, was unexpected. A prisoner, in a claim of deliberate indifference with respect to an inmate attack, must show that the defendants showed a deliberate or callous indifference to a *specific, known*, substantial risk of serious harm to the plaintiff. *See Sarratt v. Daughtery,* C.A. No. 2:06-3422-HFF-RSC, 2007 WL 2406784, at *2 (D.S.C. July 16, 2007) (citing *Farmer*, 511 U.S. at 835), *adopted by* 2007 WL 2406783 (D.S.C. Aug. 20, 2007). A prison official cannot be found liable unless it is shown that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he or she also drew the inference. *Farmer*, 511 U.S. at 835. A negligent failure to protect a prisoner from violence does not violate the Constitution. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (negligence not actionable under Section 1983).

In his affidavit in support of his response in opposition to summary judgment, the plaintiff discloses that, while awaiting transfer to Evans in January 2013, he was housed with "another member" of the security threat group, who attacked the plaintiff, but the plaintiff did not report the incident to prison officials (doc. 104-1). This incident is,

---

[3]In the original complaint (doc. 63-1), the date of this attack is listed as November 19, 2013, which is obviously a scrivener's error for November 19, 2012.

11

presumably, the incident referenced in the original complaint (doc. 63-1 at 7).  In light of the plaintiff's admitted failure to report the alleged incident to prison officials, it cannot be said that defendants Cohen, Wiggins, Capers, Eichelberger, and Mole were aware of facts from which the inference could be drawn that a substantial risk of serious harm to the plaintiff existed at Ridgeland, as required by *Farmer*,  511 U.S. at 835.  The plaintiff's failure to report the incident that took place when he was awaiting transfer precluded defendants Cohen, Wiggins, Capers, Eichelberger, and Mole from having information relating to threats to the plaintiff that could have been forwarded by personnel at Ridgeland to personnel at Evans.  Moreover, the plaintiff has come forward with no evidence that defendants Cohen, Wiggins, Capers, Eichelberger, and Mole tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

Moreover, as noted by Warden Cohen in his affidavit, neither he nor the other Ridgeland defendants "have any ability to control the placement of an inmate within another institution" (doc. 82-5 at 3).  The plaintiff's placement in a particular cell in the segregation unit at Evans on March 7, 2013, which was approximately thirty-five days after his arrival there, was not  the result of actions taken by any of the Ridgeland defendants in this case. This court recognizes that cell assignments are left to the decision of individual prison administrators. *See McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); and *Keeler v. Pea*, 782 F. Supp. 42, 43–44 (D.S.C. 1992) (South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison).

The plaintiff's contention that the defendants, all of whom were employees at Ridgeland during the relevant times in this case,  are responsible for an inmate attack upon

him at Evans — approximately thirty-five days *after* his transfer there — is based on an invalid deduction of fact, which is best articulated in the maxim "*Post hoc, ergo propter hoc.*" This maxim is usually translated as "After this, therefore, on account of this." Most federal courts have rejected the validity of that maxim in determining whether a causal connection exists. *See*, *e.g.*, *Orr v. Gardner*, 261 F. Supp. 39, 41 n.1 (D.S.C. 1966) ("*Post hoc, ergo propter hoc* in logic is usually intended as 'the fallacy of arguing from mere temporal sequence to cause and effect relationship.'"). Although a district court, when evaluating a pleading, must assume that the allegations in the pleading are true, a district court is not required to accept unwarranted deductions of fact. *Audio Invs. v. Robertson*, 203 F. Supp. 2d 555, 581 (D.S.C. 2002). Moreover, there is no indication that the plaintiff attempted to apprise officials at Evans of his security concerns prior to the incident of March 7, 2013.

Defendants Cohen, Wiggins, Capers, Eichelberger, and Mole cannot be held responsible for the actions of Cpl. Hooks, who was a lower ranking correctional officer at the time. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); and *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977). In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a Section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). Even if prior Fourth Circuit case law on supervisory liability is still good law after *Iqbal*, *see Battle v. Ozmint*, C.A. No. 2:12-1350-CMC-BHH, 2013 WL 4522517, at *9 (D.S.C. Aug. 27, 2013) (noting question as to whether supervisory liability can be imposed after *Iqbal*), the plaintiff has not satisfied the requirements for imposing supervisory liability

13

enunciated in cases such as *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994); and *Slakan v. Porter*, 737 F.2d 368, 370–75 (4th Cir. 1984). As a result, it is not necessary for this court to address whether the plaintiff has exhausted his prison remedies with respect to the defendants other than Cpl. Hooks.

Based upon the foregoing, summary judgment should be granted on the plaintiff's claims for violation of his constitutional rights by defendants Cohen, Wiggins, Capers, Eichelberger, and Mole.

***Qualified Immunity***

The plaintiff indicates that he is suing the defendants only in their individual capacities. Hence, it is unnecessary for this court to address matters pertaining to sovereign immunity or the Eleventh Amendment, which were raised by the defendants on brief. With respect to the suit against the defendants in their individual capacities, the defendants assert qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine if a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts

14

of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The individual defendants, with the exception of Cpl. Hooks, are entitled to qualified immunity because the plaintiff has failed to demonstrate that these defendants violated his constitutional rights. *See Danser v. Stansberry*, No. 13-1828, 2014 WL 2978541, at *4-7 (4th Cir. July 3, 2014) (finding district court erred in denying correctional officer's motion for summary judgment asserting qualified immunity in deliberate indifference case).

### Cpl. Hooks

As stated earlier, the plaintiff alleges that Cpl. Hooks told members of a security threat group that the plaintiff was a "snitch." The labeling of a prisoner as a "snitch" is actionable under controlling circuit case law. *Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990) ("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"). The affidavit of Warden Cohen indicates that Cpl. Hooks has been deployed outside the United States with the Air Force Reserve (doc. 82-5 at 4). Although the plaintiff has stated a facially cognizable claim against Cpl. Hooks, there is no affidavit from Cpl. Hooks in the case record because he has been deployed outside the United States. Counsel for the defendants have been unable to contact Cpl. Hooks to obtain an affidavit relating to what Cpl. Hooks allegedly said in November 2012.

In light of Cpl. Hooks' deployment with the Air Force Reserve, the Servicemembers Civil Relief Act ("SCRA"), 50 App. U.S.C. § 501 *et seq.*, is applicable. The SCRA provides for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of service members during their military service. *See* 50 App. U.S.C. § 502. The SCRA also provides that a service member may be entitled to a stay of an action or proceeding for the period of the service member's military service and ninety days thereafter, or for any part of that period. *Id.* § 525. Cpl.

15

Hooks is a member of the United States Air Force Reserve on active duty. *See id.* § 511(2); and 10 U.S.C. § 101(a)(5)–(6) (classifying "reserve components" of military departments as part of the armed forces of the United States). In light of Cpl. Hooks' deployment, the above-captioned case should be stayed under the SCRA with respect to Cpl. Hooks.

Although the SCRA allows a court to stay an action with respect to co-defendants of a service member, *see* 50 App. U.S.C. § 513, it is not necessary to stay this case for the remaining defendants because, as discussed above, they cannot be held liable for the alleged actions of Cpl. Hooks. Hence, this court may dispose of the claims against those other defendants. *See* 50 App. U.S.C. § 525(b) ("If the servicemember is a codefendant with others who are not in military service and who are not entitled to the relief and protections provided under this Act [sections 501 to 515 and 516 to 597b of this Appendix], the plaintiff may proceed against those other defendants with the approval of the court.").

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is recommended that the district court grant the defendants' motion for summary judgment (doc. 82-1) with respect to all defendants except Cpl. Hooks and deny the motion for summary judgment as to Cpl. Hooks. With respect to Cpl. Hooks only, it is recommended that the district court stay proceedings in the above-captioned case under the SCRA, 50 App. U.S.C. § 525(a), and that counsel for the defendants be required to update the court of Cpl. Hooks' deployment status every sixty days. In light of this recommendation with respect to summary judgment, it is also recommended that the plaintiff's motion to compel or to sanction the defendants (doc. 100) be denied. The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.

September 12, 2014                         s/ Kevin F. McDonald
Greenville, South Carolina                United States Magistrate Judge

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).