IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kenneth Morice Jordan, # 300147,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>Cpt. Shawntele Hooks, *also known as*<br>Shawnte A. Hooks;<br>~~Warden Levern Cohen~~;<br>~~Lt. John Wiggins, Jr.~~;<br>~~Major Gary Eichenberg~~;<br>~~Lt. Monique M. Capers~~;<br>~~Sgt. Edward E. Mole~~,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 6:13-2247-BHH-KFM<br><br>**ORDER AND**<br>**REPORT OF MAGISTRATE JUDGE** |

　　　　　The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## **BACKGROUND**

　　　　　This case is before the court on the motion for summary judgment filed by Cpl. Shawntele Hooks[1], listed as Shawnte A. Hooks in the original complaint and in the amended complaint. Cpl. Hooks is the sole defendant remaining in the case. In a Report and Recommendation filed on September 12, 2014, the undersigned recommended that the defendants' motion for summary judgment (doc. 82-1) be granted as to all defendants except Cpl. Hooks. As to Cpl. Hooks, the undersigned recommended that proceedings be stayed pursuant to the Servicemembers Civil Relief Act ("SCRA"), 50 App. U.S.C. § 501 *et*

---

[1] In his affidavit, Hooks states his rank as Corporal (doc. 133-2).

*seq.*, because counsel for the defendants had indicated that Cpl. Hooks was deployed overseas as a service member of the Armed Forces (doc. 116 at 15-16). In an Order filed in this case on October 16, 2014, the Honorable Bruce Howe Hendricks, United States District Judge, adopted the Report and Recommendation, dismissed all defendants except Cpl. Hooks, and remanded the matter to the undersigned magistrate judge.

On December 16, 2014, defense counsel filed a status report as to Cpl. Hooks, stating that he "is not deployed overseas at this time" (doc. 126). The undersigned lifted the stay under the SCRA, directed defense counsel to notify the Clerk's Office about the appropriate identification for Cpl. Hooks, and directed Cpl. Hooks to respond to the plaintiff's interrogatories (doc. 127). Counsel for Cpl. Hooks filed a letter concerning the appropriate identification of the defendant (doc. 131) on January 5, 2015, and filed a motion for summary judgment (doc. 133) on January 30th. The undersigned on February 2nd, issued a *Roseboro* order to apprise the plaintiff of summary judgment procedure. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff filed a statement relating to the stay under the SCRA (doc. 142) on March 2nd, and on March 9th, filed his formal response to the motion for summary judgment (doc. 144). Cpl. Hooks filed a reply (doc. 151) on March 12th.

## **FACTS PRESENTED**

Cpl. Hooks was at all relevant times in this case an employee at the Ridgeland Correctional Institution ("Ridgeland") in Jasper County, South Carolina.

*Plaintiff's Allegations*

The amended complaint (doc. 63) incorporates the original complaint (doc. 1). In the amended complaint, the plaintiff alleges that in October 2012, while an inmate at Ridgeland, he told Cpl. Hooks that inmate Truesdale was smuggling drugs into the prison during visitation. Cpl. Hooks assured the plaintiff that his tip would remain confidential and that he would notify Warden Cohen. Cpl. Hooks also told the plaintiff that, if his information

was accurate, he would "excuse" a cellphone charge relating to the plaintiff's roommate. However, the plaintiff alleges that "Hooks flagged Truesdale and told him that there's an informant in Beaufort Unit and that he would eventually expose him."

The plaintiff alleges thereafter, on November 19 or 20, 2012,[2] he was approached by inmate Parker who said that Cpl. Hooks identified the plaintiff as providing information concerning a robbery, which resulted in Parker's interrogation. Several minutes later, the plaintiff was assaulted by another inmate and was told to leave the Beaufort Unit because Cpl. Hooks identified the plaintiff as an informant. The plaintiff was then assaulted by various inmates. The next day, the plaintiff and other inmates, including inmate Truesdale, were placed in a holding cell together while they awaited questioning by Cpl. Hooks and others. The plaintiff, who was interviewed first, admittedly did not cooperate. Inmate Truesdale returned from his interview and told everyone in the holding cell that the plaintiff was a confidential informant and that he [inmate Truesdale] was the person that the plaintiff had reported for smuggling drugs. In the holding cell, the decision was made that the plaintiff must prove his "innocence or be dealt with accordingly."

The plaintiff further alleges the next day Cpl. Hooks confiscated his television and radio. The plaintiff told Cpl. Hooks that he knew that Cpl. Hooks had revealed him as an informant, and Cpl. Hooks told the plaintiff that he deserved "whatever they do to you." Cpl. Hooks then left the room, went to the officers' desk, and announced that the plaintiff was and is an informant. The plaintiff followed up by submitting requests to staff and a grievance to Warden Cohen. After receiving no response, he wrote to Internal Affairs. The plaintiff alleged that he was moved to the Special Management Unit ("SMU") at Ridgeland, where he was in several fights with another "Organization member" in January 2013.

---

[2]In his filings, the plaintiff has used both the dates of November 19 and 20, 2012, as the date of the first inmate attack.

3

The plaintiff was transferred to Evans Correctional Institution ("Evans"), and in March 2013, was placed in the SMU at Evans with a known "Organization member." The plaintiff alleges that officials at Evans were not contacted by their Ridgeland counterparts concerning the "endangerment" of the plaintiff's life. The plaintiff alleges that he was stabbed by his Evans cellmate, who said he was being targeted for being a "snitch" at Ridgeland and that he would receive the same treatment at any other institution. He was taken to the hospital and has experienced ongoing numbness in his left thumb and index finger. He further claims he has experienced unusual nervousness, paranoia, and post-traumatic stress syndrome, for which he has been prescribed medication and has been placed in a single cell (doc. 63-1 at 5-8).

***Cpl. Hook's Motion***

In his motion for summary judgment, Cpl. Hooks argues that the plaintiff fails to show that he was ever told by the plaintiff or otherwise aware that the plaintiff was in danger, nor that he was deliberately indifferent to the plaintiff's safety. He contends that the inmate attack in November 2012 arose because the plaintiff was improperly in an unassigned area, and, in any event, it did not result in medical attention for the plaintiff. As for the plaintiff's inmate attack at Evans in March 2013, Cpl. Hooks points out that he did not work at Evans and that the attack occurred more than four months after the Ridgeland incident.

***Evidence***

In his motion for summary judgment (doc. 133-1 at 5), Cpl. Hooks referenced the affidavit of Levern Cohen, Warden of Ridgeland, which was submitted in support of the defendants' prior motion for summary judgment (*see* doc. 82-5). Warden Cohen testified in his affidavit that the plaintiff was housed in Ridgeland's Beaufort A unit until his transfer to Evans on January 31, 2013. During the incident of November 20, 2012, the plaintiff was "out of place" in the Beaufort B unit, and the incident in the Beaufort B unit "involved

inmates, including Inmate Jordan, known to be involved in security threat groups." As a result of the incident, the plaintiff was charged with unauthorized inmate organization activity or participating with security threat groups. He was found guilty of that offense on January 16, 2013. The plaintiff was not seen by medical as a result of the incident on November 20, 2012. Warden Cohen stated that Cpl. Hooks never told him that the plaintiff had provided information about improper activities on the part of inmate Truesdale. Warden Cohen further stated that if an inmate provided information about improper activities on the part of another inmate and told a supervisor that his life was in danger, the allegation would be investigated. If the allegation is confirmed through that investigation, a "separation/caution form" or "pre-hearing form" was completed, and a process was begun to separate the informant inmate from the other. He stated that "[a]fter a review of the records, I see no record that either form was completed, indicating to me that Inmate Jordan never made a statement that his life was in danger, or that there was a threat to his safety that he expressed." Warden Cohen further stated that the plaintiff never asked for separation from Truesdale or from any security threat group while he was at Ridgeland, and there is no evidence of any instances of physical violence to the plaintiff subsequent to the November 2012 incident and before his move to Evans. The plaintiff was moved to Evans "due to security concerns as a result of his STG [security threat group] activity." Warden Cohen further stated that "[n]one of the Defendants named in this lawsuit, including myself, have any ability to control the placement of an inmate within another institution." He stated that if he did have knowledge that an inmate was in a particular risk, he would contact the warden at the institution to which that inmate was transferred. However, he was not aware of any danger to the plaintiff from inmate Truesdale before the plaintiff was transferred. Likewise, the warden was not aware of any danger to the plaintiff from the inmate who allegedly attacked him at Evans (doc. 82-5 at 2-4).

In his affidavit submitted in support of the motion for summary judgment, Cpl. Hooks recalls speaking with the plaintiff in his capacity as a contraband control officer, but does not recall speaking about a cellphone or about inmate Truesdale. He further testifies that he never repeated to any inmate, including inmates Truesdale or Parker, any allegation made by the plaintiff, and never told any inmate that the plaintiff was a snitch. He also denies telling the plaintiff that he would excuse a cellphone charge against the plaintiff's roommate. Regarding the November 20th incident, Cpl. Hooks recounts that the plaintiff was involved in an incident in the Beaufort B Unit, "which involved inmates, including Inmate Jordan, known to be involved in security threat groups ('STGs')." At the time of the incident, the plaintiff was out of place, as he was housed in the Beaufort A Unit. The plaintiff was charged as a result of the incident with unauthorized inmate organization activity or participating in a security threat group, and he was later found guilty on January 16, 2013. Cpl. Hooks admits confiscating the plaintiff's television and radio, but denies announcing that the plaintiff was a snitch. The plaintiff never asked him for separation from inmate Truesdale or any STG group at Ridgeland, and the plaintiff never told him that he was in danger while being housed at Ridgeland (doc. 133-2 ¶¶ 2-16).

In support of his opposition to the motion for summary judgment, the plaintiff submitted the affidavit of Andrew Franklin Hodge who testified: "I Andrew Franklin Hodge personally heard Cpl Shawn Hooks announce that [the plaintiff] was a snitch on 11-22-12" (doc. 144-2).

The plaintiff also submitted his own affidavit in which he stated that "Officer D. Williams" told the plaintiff "that he remembered Cpl. Shawn Hooks making the public announcement that [the plaintiff] was a snitch . . . on 11-22-12"[3] (doc. 144-1).

---

[3]An affidavit submitted to support a party's factual position in support or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to
(continued...)

In his opposition to the motion for summary judgment (doc. 144 at 2), the plaintiff also referenced the affidavit of inmate Christian Ray, which the plaintiff submitted as an exhibit to his response in opposition to the previous motion for summary judgment (doc. 104-2). Ray testified that "it was knowledge [sic], that Cpl. Shawnne [sic] Hooks come to the dorm and announced that inmate Kenneth Jordan was a snitch" (*id.* at 2).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

---

[3](...continued)
testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The plaintiff's affidavit contains hearsay that would not be admissible in evidence as he is offering an out of court statement made by another to prove the matter asserted therein. *See* Fed. R. Evid. 801(c).

7

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### SCRA

The plaintiff contends this case should not have been stayed under SCRA because Cpl. Hooks was not deployed and that summary judgement should be denied for the same reason. Cpl. Hooks contends that the stay under the SCRA is not relevant to the motion for summary judgment and that counsel "exercised diligence in locating Cpl. Hooks by seeking information from his former boss, who testified by Affidavit that he believed Cpl. Hooks was deployed" (doc. 151 at 1–4).

The undersigned agrees with Cpl. Hooks that the previous stay under the SCRA is irrelevant to the motion for summary judgment. The plainitff has failed to show that counsel's invocation of the SCRA was purposefully misleading, or that he suffered any prejudice resulting from imposition of the stay. Moreover, Cpl. Hooks responded to the plaintiff's discovery requests on February 4, 2015, more than a month before the plaintiff's response to the motion for summary judgment was due (*see* doc. 152-1).

### Failure to Protect

Prison officials are required to protect prisoners from being attacked by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (suffering physical assaults in prison is not "part of the penalty

that criminal offenders pay for their offenses against society") and *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."). A prisoner, in a claim of deliberate indifference with respect to an inmate attack, must show that the defendants showed a deliberate or callous indifference to a *specific, known*, substantial risk of serious harm to the plaintiff. *See Sarratt v. Daughtery,* C.A. No. 2:06-3422-HFF-RSC, 2007 WL 2406784, at *2 (D.S.C. July 16, 2007) (citing *Farmer*, 511 U.S. at 835), *adopted by* 2007 WL 2406783 (D.S.C. Aug. 20, 2007). A prison official cannot be found liable unless it is shown that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he or she also drew the inference. *Farmer*, 511 U.S. at 835. A negligent failure to protect a prisoner from violence does not violate the Constitution. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (negligence not actionable under Section 1983).

The plaintiff has failed to show that the incident on November 20, 2012, when the plaintiff was "out of place" and in the Beaufort B unit, should have been anticipated by Cpl. Hooks. In his opposition to the motion for summary judgment, the plaintiff does not argue or present evidence that Cpl. Hooks' alleged labeling him as a "snitch" in any way precipitated the November 20, 2012, incident (*see* doc. 144). Rather, the plaintiff argues that Cpl. Hooks, while investigating the November 20th incident, "reveal[ed] that the [plaintiff] was giving information to him . . . on 11-21-12," and, on November 22, 2012, Cpl. Hooks "announced" that the plaintiff was a "snitch" (doc. 144 at 2). Similarly, inmate Hodge testified that he heard Cpl. Hooks call the plaintiff a "snitch" on November 22, 2012, which was two days after the incident (doc. 144-2).

Furthermore, even assuming the plaintiff's allegation that Cpl. Hooks called him a "snitch" is true, there is no indication that the alleged statement had anything to do

9

with the alleged assault while the plaintiff was awaiting transfer to Evans in January 2013. In his affidavit in support of his response in opposition to the earlier motion for summary judgment, the plaintiff discloses that, while awaiting transfer to Evans in January 2013, he was housed with "another member" of the security threat group, who attacked the plaintiff, but the plaintiff did not report the incident to prison officials (doc. 104-1 ¶ 15). This incident is, presumably, the incident referenced in the original complaint in which the plaintiff alleged that he was "housed with another Organization member and we fought on several occasions" (doc. 63-1 at 7). There is no record that the plaintiff ever asked for separation from any security threat group while at Ridgeland. In light of the plaintiff's admitted failure to report the alleged incident to prison officials, it cannot be said that the defendants who have already been dismissed from this case or Cpl. Hooks were aware of facts from which the inference could be drawn that a substantial risk of serious harm to the plaintiff existed at Ridgeland, as required by *Farmer*, 511 U.S. at 835. The plaintiff's failure to report the incident that took place when he was awaiting transfer precluded Cpl. Hooks or the previously dismissed defendants from having information relating to threats to the plaintiff that could have been forwarded by personnel at Ridgeland to personnel at Evans. Moreover, the plaintiff has come forward with no evidence that Cpl. Hooks or the previous defendants tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

"Eighth Amendment claims for failure to protect may be brought for injunctive relief to avoid future injury." *McKinnedy v. Pate*, Civil Action No. 6:13-cv-01793-GRA, 2013 WL 5517905, at *5 (D.S.C. Oct. 1, 2013) (citing *Corey v. Cartedge*, Civil Action No. 9:11-1078-HFF-BM, 2011 WL 5870040, at *4–5 (D.S.C. June 30, 2011), *adopted by* 2011 WL 5877071 (D.S.C. Nov. 21, 2011)). Cpl. Hooks no longer works for the South Carolina Department of Corrections; his employment ended in November of 2013 (doc. 133-2 at 1). At the time the plaintiff filed this case on August 26, 2013, he was confined at Allendale.

The South Carolina Department of Corrections website (http://public.doc.state.sc.us/scdc-public/, last visited on Mar. 18, 2015) indicates that the plaintiff was transferred to Ridgeland on February 18, 2015.[4]  The plaintiff filed a change of address notice on February 27, 2015 (doc. 141 at 2).  Although the plaintiff has been returned to Ridgeland, no injunctive relief is available against Cpl. Hooks (the sole defendant remaining in this case) because he is no longer employed by the South Carolina Department of Corrections.  *Incumaa v. Ozmint*, 507 F.3d 281, 286–88 (4th Cir. 2007).

With respect to the incident at Evans, as noted by Warden Cohen in his affidavit, neither he nor the other Ridgeland defendants had "any ability to control the placement of an inmate within another institution" (doc. 82-5 at 4).  The plaintiff's placement in a particular cell in the segregation unit at Evans in March 2013, which was approximately thirty-five days after his arrival at Evans, was not the result of actions taken by Cpl. Hooks.  This court recognizes that cell assignments are left to the decision of individual prison administrators.  *See McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); and *Keeler v. Pea*, 782 F. Supp. 42, 43–44 (D.S.C. 1992) (South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison).

As discussed above, the plaintiff has not shown that the incident on November 20, 2012, when the plaintiff was "out of place" and in the Beaufort B unit, should have been anticipated by Cpl. Hooks.  Furthermore, the plaintiff has failed to show that Cpl. Hooks is responsible for the previously-unreported inmate attack upon him at Ridgeland

---

[4]"This federal court may take judicial notice of factual information located in postings on governmental websites in the United States."*See Mitchell v. Newsom*, Civil Action No. 3:11-0869-CMC-PJG, 2011 WL 2162723, at *3 n. 1 (D.S.C. May 10, 2011) (collecting cases), *adopted by* 2011 WL 2162184 (D.S.C. June 1, 2011).

in late January 2013 or the inmate attack upon him at Evans in March 2013. Moreover, there is no indication that the plaintiff attempted to apprise officials at Evans of his security concerns prior to the incident there. As the plaintiff has failed to demonstrate that Cpl. Hooks showed a deliberate or callous indifference to a specific, known, substantial risk of serious harm to him, Cpl. Hooks' motion for summary judgment should be granted on these claims.

*Personal Property*

In his response to the motion for summary judgment, the plaintiff alleges that Cpl. Hooks took his television and radio because the plaintiff refused to cooperate in the investigation of the incident in the Beaufort B Unit. Deprivations of personal property, including negligent deprivations of personal property, do not support an action for damages under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. In other words, "[t]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989).

The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property, even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state. *Yates v. Jamison*, 782 F.2d 1182, 1183–84 (4th Cir. 1986). Although *Yates v. Jamison* has been partially superannuated for cases where plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty," *Plumer v. Maryland*, 915 F.2d 927, 929–32 (4th Cir. 1990), the holding in *Yates v. Jamison* is still binding on lower federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal property. Hence, the loss of the plaintiff's personal property (television and

radio) is not a basis for a federal civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff's claims relating to his lost property are cognizable under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 *et seq*. (Westlaw 2015), because Ridgeland is operated by a political subdivision or state agency of the State of South Carolina.

### *Eleventh Amendment*

Under the Eleventh Amendment, Cpl. Hooks is immune from suit in his official capacity. *See Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 (D.S.C. 2010), which cites *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995).

### *Emotional Distress*

The plaintiff is not entitled to relief for his emotional distress. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), a prisoner is not entitled to relief for mental stress, emotional distress, or embarrassment. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 558–59 (D.S.C. 2008) (collecting cases).

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Even assuming that Cpl. Hooks called the plaintiff a "snitch" in front of other inmates, there is no evidence showing that the alleged inmate attacks at Ridgeland of November 20, 2012, and January 2013 (which the plaintiff, admittedly, failed to report) or the attack at Evans on March 7, 2013, resulted from anything done or said by Cpl. Hooks on November 21 or 22, 2012. *See Smith v. Beasley*, Civil Action Nos. 0:07-1641-HFF-BM and 0:07-1642-HFF-BM, 2007 WL 2156632, at *2 (D.S.C. July 25, 2007) (adopting Report and Recommendation holding that a plaintiff suing a government official in his or her individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right). As there has been no deprivation of a constitutional right in the above-captioned case, the defendant is entitled to qualified immunity.

## ORDER AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS ORDERED that the plaintiff's motion to produce documents (doc. 141) is moot as Cpl. Hooks supplemented his responses to the interrogatories at issue (*see* doc. 152-1) and the plaintiff's motion to be moved to another location (doc. 147) is denied. Furthermore,

IT IS RECOMMENDED that the District Court grant Cpl. Hooks' motion for summary judgment (doc. 133). The attention of the parties is directed to the notice on the next page.

s/Kevin F. McDonald<br>
United States Magistrate Judge

March 24, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **300 East Washington Street — Room 239**
> **Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).